# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAJESH PATHAK,<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT,<br>Respondent. | Case No. 1:26-cv-01829-JLT-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT RESPONDENT'S MOTION TO DISMISS AND DISMISS FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS WITHOUT PREJUDICE<br><br>(ECF Nos. 19, 21) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## I.

## BACKGROUND

Petitioner is a citizen of India who was admitted to the United States on April 5, 2001, as a nonimmigrant visitor for business with authorization to remain in the United States until October 5, 2001. Petitioner remained in the United States beyond the temporary period without authorization. (ECF No. 1 at 16; ECF No. 19 at 6.[1]) On November 4, 2025, Department of Homeland Security ("DHS") officers arrested Petitioner by name as he walked to his restaurant in Stockton, California. Officers initially told Petitioner he faced assault charges, but fingerprint records confirmed no such charges existed. Petitioner was then held for overstaying his visa. (ECF No. 19 at 6.)

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

Petitioner previously requested a bond hearing with an immigration judge, but an attorney appears to have withdrawn the bond request on December 9, 2025 on Petitioner's behalf without his informed consent. (ECF No. 19 at 6; ECF No. 21-1.)

The first amended petition alleges:

> Petitioner has been experiencing persistent numbness and tingling on the right side of his face, which are recognized clinical warning signs of TIA or stroke. *Brown Decl'n*. ¶ 12. He requested medical attention and was ignored. *Id*. On April 13, 2026, the facial numbness continued and he developed edema in his right leg. He was finally assessed by a nurse. His blood pressure was recorded at 190/120. *Id*.
>
> Unilateral facial numbness, lower extremity edema, and a blood pressure of 190/120 is a presentation requiring immediate neurological evaluation under any standard of care.3 Instead, detention medical staff increased his dose of hydrochlorothiazide, a diuretic, without assessing renal function. *Brown Decl'n* ¶ 13. No neurological workup was ordered or follow-up scheduled. No one has checked his blood pressure since April 13th. *Id.*
>
> As of April 14, 2026, Petitioner had run out of the aspirin he had been purchasing from commissary to self-treat his symptoms, and could not obtain more until the following weekend. *Id.*
>
> On April 17, 2026, Petitioner was told by facility medical staff that his medication was finished. He was given no medication that day.
>
> On April 21, 2026, six days after his last blood pressure monitoring and six days without medication, Petitioner was called in for a check-up. His blood pressure was again recorded at 190/120. He was given a diuretic and kept in the medical unit until his blood pressure came down to 149. His leg swelling remained the same. No neurological evaluation was conducted. At daily medication dispersal during this period, the nurse repeatedly told him she did not have his medication. Ex. 2, *Messages from Petitioner*.
>
> On April 22, 2026, Petitioner's blood pressure was checked and recorded at [175/120].[2] *Id*. He was told to sit and relax until it came down to 155/120. *Id*. The nurse told him the facility had not had his correct medication for the past six days and gave him a different, unfamiliar medication to "see how it worked." *Id*. He was then told to leave the medical unit. *Id*. He did not receive treatment for his shoulder, and the nurse did not examine his feet, which remain swollen. *Id*.
>
> As of April 24, 2026, the date of this filing, Petitioner reports that he is frightened he will lose the use of his arm if his shoulder surgery continues to be delayed. *Id*. He is also frightened that he will suffer a stroke. His neurological symptoms

---

[2] A blood pressure reading at or above 180/120 mmHg constitutes a hypertensive crisis requiring prompt medical evaluation. *See* American Heart Association, *Hypertensive Crisis: When You Should Call 9-1-1 for High Blood Pressure*, https://www.heart.org (last visited Apr. 16, 2026). Unilateral facial numbness is a recognized warning sign of transient ischemic attack (TIA) or stroke. *See* American Heart Association/American Stroke Association, *Stroke Warning Signs and Symptoms*, https://www.stroke.org/en/about-stroke/stroke-symptoms (last visited Apr. 16, 2026). The combination of these findings with lower extremity edema warrants immediate neurological evaluation.

> persist. *Id.* He remains without adequate medication and without the daily blood pressure monitoring promised on April 22. *Id.*
>
> The government has filed a declaration from Rae Patterson, M.D., Clinical Director of Otay Mesa Detention Center — a different facility than the one where Petitioner is held —asserting that Petitioner is receiving "clinically appropriate" care. ECF 18-1. Dr. Patterson has no direct clinical relationship with Petitioner and no firsthand knowledge of conditions at California City. Her declaration was filed on April 23, 2026, yet is silent on the following facts then known or knowable: from April 17 through April 22, facility medical staff told Petitioner his medication was unavailable and provided none; on April 21, his blood pressure was again recorded at 190/120; on April 22, he was given an unfamiliar substitute medication to "see how it worked" and was then told to leave the medical unit; and as of April 23, he remained without medication and without the daily monitoring promised on April 22. A declaration that omits these facts cannot establish that care is clinically appropriate.
>
> Petitioner's medical crisis does not exist in isolation. He entered detention with a supraspinatus tendon tear requiring surgery. *See* ECF 9, *Medical Records* and ECF 14, *Letter from Petitioner*. He subsequently fell on a wet detention floor, exacerbating that injury. *Brown Decl'n* ¶ 14-15. He has never been seen by medical staff for his shoulder, lives in daily pain, cannot sleep, and requires a sling. *Id*. A physician noted the need for an ophthalmology referral due to vision deterioration consistent with untreated hypertension—a referral that has never been scheduled. In five months, he has seen a doctor one time. *See* ECF 9, *Medical Records.*
>
> The only mechanism for requesting medical care at California City is a paper form deposited in a mailbox. There is no system for urgent or emergency medical requests. Due to the cold conditions in his cell, Petitioner contracts the flu or a cold at least twice per month. He shares a cell with one other person and an open toilet that regularly clogs for two to three days at a time.

(ECF No. 19 at 6–9 (paragraph numbering omitted) (footnote in original).)

On March 6, 2026, Petitioner filed a petition for writ of habeas corpus and a motion for temporary restraining order ("TRO"). (ECF Nos. 1, 3.) That same day, the Court denied the motion for TRO as untimely. (ECF No. 7.) On March 9, 2026, the Court denied Petitioner's motion to appoint counsel. (ECF No. 8.) On March 27, 2026, Respondent filed a response to the petition. (ECF No. 10.) On April 3, 2026, the Court reconsidered the order denying appointment of counsel and appointed counsel. (ECF No. 13.)

On April 17, 2026, Petitioner filed another motion for TRO. (ECF No. 15.) The Court held the motion for TRO in abeyance pending the filing of a report by Respondents detailing the medical care Petitioner is receiving and explaining why this level of care is sufficient. (ECF No. 16.) The report was submitted, and the Court denied the motion for TRO. (ECF Nos. 18, 20.)

On April 24, 2026, Petitioner filed a first amended petition ("FAP"), raising the following claims for relief: (1) denial of constitutionally adequate medical care; (2) unlawful arrest and initial detention without individualized justification; and (3) denial of neutral adjudication of detention. (ECF No. 19.) On May 8, 2026, Respondent filed an amended response and motion to dismiss. (ECF No. 21.) On May 19, 2026, Petitioner filed an opposition to the motion to dismiss. (ECF No. 22.)

## II.

## DISCUSSION

### A. Exhaustion

Respondent asserts that the FAP should be dismissed for failure to exhaust administrative remedies because "Petitioner is subject to discretionary detention authority under 8 U.S.C. § 1226(a) and is eligible for a bond hearing," but withdrew a previous request for a bond hearing, and "Petitioner must request a bond hearing to be provided one." (ECF 21 at 3.)

> As a prudential matter, habeas petitioners must exhaust available judicial and administrative remedy remedies before seeking relief. 28 U.S.C § 2241; *see also* *Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), overruled on other grounds by *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 (2006). Courts may require exhaustion as a prudential matter when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal citations and quotations omitted). If a petitioner fails to exhaust prudentially required administrative remedies, then "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).
>
> However, because exhaustion is not jurisdictional, the requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury would result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies." *Aden v. Nielsen*, No. C18-1441RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019).

Singh v. Warden, No. 1:26-CV-00172-JLT-EPG, 2026 WL 1328508, at *3 (E.D. Cal. May 13, 2026).

Petitioner argues that irreparable harm is established by specific medical evidence and a bond hearing cannot remedy a medical emergency. (ECF No. 22 at 3.) Here, Respondents acknowledge that Petitioner is subject to discretionary detention under § 1226(a), which provides for release on bond, and Petitioner does not contest Respondents' assertion that Petitioner withdrew a previous request for bond and has not requested another bond hearing in his immigration proceedings. In addition to the medical care claim, the FAP also asserts that Petitioner is detained without individualized justification. (ECF No. 19 at 18.) Accordingly, the Court recommends finding that Petitioner's claim that he is detained without individualized justification should be dismissed for failure to exhaust administrative remedies.

**B. Medical Care**

Petitioner asserts that he has been denied constitutionally adequate medical care, in violation of the Due Process Clause of the Fifth Amendment. (ECF No. 19 at 17–18.) Respondent argues that conditions of confinement challenges are not cognizable on habeas review. (ECF No. 21 at 4–5.)

A claim is cognizable in federal habeas corpus when a prisoner challenges "the fact or duration of his confinement" and "seeks either immediate release from that confinement or the shortening of its duration." Preiser v. Rodriguez, 411 U.S. 475, 489 (1973). In contrast, a civil rights action is the proper method to challenge the conditions of confinement. McCarthy v. Bronson, 500 U.S. 136, 141–42 (1991); Preiser, 411 U.S. at 499. The Ninth Circuit has "long held that prisoners may not challenge mere conditions of confinement in habeas corpus." Nettles v. Grounds, 830 F.3d 922, 933 (9th Cir. 2016) (en banc) (citing Crawford v. Bell, 599 F.2d 890, 891–92 (9th Cir. 1979)). See Shook v. Apker, 472 F. App'x 702, 702–03 (9th Cir. 2012) (holding that district court did not err in treating conditions of confinement claims as arising under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), rather than 28 U.S.C. § 2241); Alcala v. Rios, 434 F. App'x 668, 669–70 (9th Cir. 2011) (holding that district court did not err in finding that conditions of confinement claims are not cognizable under 28 U.S.C. § 2241).

In Pinson v. Carvajal, 69 F.4th 1059 (9th Cir. 2023), two federal prisoners "challenge[d] the dismissals of their habeas corpus petitions in which they asserted that their incarceration

during the COVID-19 pandemic violated the Eighth Amendment and sought release from custody." Pinson, 69 F.4th at 1062. Holding that "the relevant question is whether, based on the allegations in the petition, release is *legally required* irrespective of the relief requested," the Ninth Circuit found that "Sands has failed to allege facts to support his legal contention that his detention was unlawful because no set of conditions exist that would cure the constitutional violations." Id. at 1072, 1075. "Because Sands's claims lie outside the historic core of habeas corpus . . . the district court properly found it lacked jurisdiction to hear Sands's petition." Id. at 1075. Subsequently, the Ninth Circuit has stated that "Pinson solidified the rule that a habeas claim is one challenging the fact of confinement, rather than the conditions of confinement." Doe v. Garland, 109 F.4th 1188, 1194 (9th Cir. 2024).

"[A]llegations that continued custody poses a substantial risk of serious harm, without more, do not state a habeas claim when the asserted constitutional violation is the alleged inadequacy of medical care and remedial measures short of release would address any such circumstance." Boscan v. Becerra, No. 1:26-CV-00651-KES-SAB, 2026 WL 310093, at *2 (E.D. Cal. Feb. 5, 2026). Petitioner argues that "Dr. Leong's declaration establishes that California City cannot provide the care Petitioner requires. No injunction requiring better conditions could remedy a violation that the facility has demonstrated, on this record, it is unwilling or unable to address." (ECF No. 22 at 4.) Dr. Leong states that his "overall impression is that Petitioner has not yet received an adequate evaluation or medical management of his symptomatic uncontrolled hypertension." (ECF No. 22-1 at 3.) Dr. Leong declares in pertinent part:

> Petitioner requires a basic medical evaluation for symptomatic uncontrolled hypertension which is based on assessing his organs for damage. An EKG would assess his basic cardiac function, to check for signs of ischemia and arrhythmia. Basic labs include a CBC, metabolic panel to check renal function, troponin to evaluate for cardiac ischemia, pro-BNP to check for heart failure ( consistent with elevated blood pressure and pedal edema), and urinalysis to evaluate renal function. Basic imaging studies needed for symptomatic uncontrolled hypertension, include a CXR for signs of fluid overload and an enlarged heart, which are both signs of heart failure, a sign of cardiac damage from uncontrolled hypertension.
>
> Given Petitioner's facial numbness and tingling, there is a concern for neurological injury from the uncontrolled hypertension. If his symptoms resolve

> with blood pressure management, then it is unlikely to be a stroke. But the only way to know for sure if there is a vascular neurologic complication is to do brain imaging, usually a non-contrast brain MRI for possible infarct, and carotid vessel imaging, either with a carotid doppler or an CT angiogram of the head and neck. In terms of his deteriorating vision in the setting of uncontrolled hypertension, an evaluation with an ophthalmologist for possible retinopathy would be reasonable in order to prevent irreversible damage to his vision.
>
> . . .
>
> In terms of medical management of Petitioner's uncontrolled hypertension, it is unclear if anyone is really monitoring his blood pressure or consistently providing a medication regimen. Petitioner needs to have basic labs to assess his renal function, however, it appears that no one is taking responsibility for managing his hypertension and preventing end organ damage. The only time a physician would not act to lower severely elevated blood pressure would be permissive hypertension in the setting of an acute stroke, when lowering the blood pressure would effectively also lower the perfusion to the brain. Barring that extreme situation, the goal of hypertensive management is to 130/80 or less. To allow his blood pressure to remain so elevated without medical attention is not standard medical care.

(ECF No. 22-1 at 2–3 (paragraph numbering omitted).)

Although Dr. Leong's declaration indicates that the medical care that Petitioner has received may not be adequate, it does not establish that remedial measures short of release from custody cannot address any alleged inadequacy of medical care. In fact, Dr. Leong states that "it is routine that if an outpatient clinic or prison clinic is not able to provide adequate medical attention, the patient is often transported to a higher level of care, usually the hospital emergency department for an expedited evaluation and management[.]" (ECF No. 22-1 at 3.) This suggests that measures short of release can address any alleged inadequacy of medical care. Accordingly, the Court recommends finding that Petitioner is not entitled to habeas relief on this ground.

**C. Lack of Neutral Decisionmaker**

Petitioner asserts that he has been "deprived of any meaningful opportunity to contest his detention before a genuinely neutral decision-maker" given that "immigration judges lack the structural independence required by the Fifth Amendment's Due Process Clause" because "they are employees of the Executive Branch, subordinate to the Attorney General who directs both immigration enforcement and adjudication and subject to removal for decisions that do not advance the administration's enforcement priorities." (ECF No. 19 at 19, 18.)

///

> To establish a due process violation, Petitioner must show (1) "the proceeding was so fundamentally unfair that [he] was prevented from reasonably presenting his case," and (2) "prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation." *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620-21 (9th Cir. 2006) (internal quotation marks and citation omitted). Petitioner can meet this burden by showing "a deep-seated favoritism or antagonism that would make fair judgment impossible," *Rivera v. Mukasey*, 508 F.3d 1271, 1276 (9th Cir. 2007) (internal quotation marks and citation omitted), but "a mere showing that the IJ was unfriendly, confrontational, or acted in an adversarial manner is not enough," *Rizo v. Lynch*, 810 F.3d 688, 693 (9th Cir. 2016).

Mata-Yanez v. Bondi, No. 23-1329, 2025 WL 3014219, at *1 (9th Cir. Oct. 28, 2025). Petitioner's argument regarding immigration judges' lack of structural independence does not establish "a deep-seated favoritism or antagonism that would make fair judgment impossible." Vargas-Hernandez v. Gonzales, 497 F.3d 919, 926 (9th Cir. 2007). Accordingly, the Court recommends finding that Petitioner is not entitled to habeas relief on this ground.

## III.

## RECOMMENDATIONS

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. Respondent's motion to dismiss (ECF No. 21) be GRANTED; and
2. The first amended petition for writ of habeas corpus (ECF No. 19) be DISMISSED without prejudice.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.

///

Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 6, 2026**

STANLEY A. BOONE
United States Magistrate Judge